Christopher A. LaVoy (SB# 016609)
Tiffany & Bosco, P.A.
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-9240
Telephone: (602) 255-6000
Facsimile: (602) 255-0103
E-Mail:  cal@tblaw.com

Connie J. Mableson (SB# 010665)
Connie J. Mableson, PLLC
1938 East Osborn Road
Phoenix, Arizona 85016
Telephone: 602-277-8100
E-Mail: connie@mablesonlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Whirled Music Publishing, Inc., an Arizona corporation,<br><br>                   Plaintiff,<br><br>        v.<br><br>John A. Costello, III and Jennifer Costello, husband and wife,<br><br>                   Defendants. | Case No.<br><br><br>**COMPLAINT** |

For its Complaint, plaintiff Whirled Music Publishing, Inc. ("Whirled") alleges as follows:

## Overview of Action

1.      Whirled terminated defendant John A. Costello's employment as a staff songwriter on December 31, 2014. In retaliation, Costello asserted that he owned the copyrights to the music he had composed and associated sound recordings for Whirled on

1

the theory that he was an independent contractor rather than an employee. Costello asserted this despite payroll and tax records reflecting an employment relationship with Whirled; his receipt of a regular salary and health, retirement and other employee benefits; *and his application for unemployment benefits* after losing his job. The copyright to music composed by an employee belongs to the employer as a "work[] made for hire" under 17 U.S.C. § 201(b).

2.       Whirled brings this action for a declaratory judgment confirming its ownership of the subject copyrights. If it is determined Costello was not an employee, Whirled is entitled to restitution of the salary and employee benefits it paid Costello. Whirled also seeks declaratory relief concerning the copyrights to music that Costello promised Whirled in exchange for his shares in the company. Last, Whirled sues Costello for trademark infringement.

## **The Parties**

3.       Plaintiff Whirled is an Arizona corporation with its principal place of business in Maricopa County, Arizona.

4.       Defendants John and Jennifer Costello, husband and wife, reside in Maricopa County, Arizona. The Costellos were acting for the benefit of their marital community at all times relevant hereto.

## **Jurisdiction and Venue**

5.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and pursuant to the doctrine of supplemental jurisdiction.

6.       Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a).

. . .

. . .

. . .

2

## Facts Common to All Counts

### *The Formation of Whirled*

7.     In 2002, a small group of talented and respected musicians established Whirled primarily to place music in television shows, televised sporting events, and films. The company has grown to accumulate and own a large catalogue of music spanning over nine decades that is marketed under several genre-specific brands, including Wild Whirled Music, Whirled Music, Trailerville Music, Muzik Headz, Fervor Records, Vintage Masters, Fervor Records Vintage Masters, and Cue Sheet Music. The company represents hundreds of songwriters and composers worldwide.

8.     Whirled licenses its music in its catalogue for a fee and the right to receive "performance royalties." A "performance royalty" is paid every time a song is played. Publishers and songwriters register with a performance rights organizations ("PROs") such as Broadcast Music, Inc. ("BMI") to collect performance royalties on their behalf. PROs like BMI pay the music publishing company and songwriters based on the actual use of the compositions. Once a composition is registered with the PRO, no changes can be made to that registration without the consent of the music publishing company and all of the songwriters.

9.     Whirled's shareholders include John Costello and David Hilker, each holding 26.323% of the company's shares and both sitting on its board. Hilker is also the company's CEO and President. Costello was formerly its Secretary.

10.   Hilker and Costello are longtime musical collaborators and business partners. They received their respective shares in Whirled in exchange for contributing the copyrights and publishing interests to certain musical compositions and related sound recordings they jointly held through a pre-existing co-author agreement and several pre-existing partnership(s). Such contribution is described in the May 20, 2002 minutes of Whirled's first board meeting (*see* Exhibit 1).

11.     Whirled's catalogue generally consists of musical compositions and sound recordings contributed at Whirled's formation by Hilker and Costello through their several pre-existing partnerships; music composed and sound recordings produced by staff songwriters, including until recently Costello; and music acquired by copyright assignment from third-parties, often through catalogue acquisitions.

### *Costello's Employment as a Staff Songwriter*

12.     Costello was among the musicians who started Whirled and a full-time staff songwriter until recently.

13.     Whirled paid Costello an annual salary ($64,500 in 2014) plus granted him a "writer's share" of performance royalties. With respect to the "writer's share," Costello and Hilker requested that it be split equally between them for the compositions that each *solely* wrote for Whirled by listing them both as co-writers on such compositions, just as they shared attribution and royalties through their pre-existing co-author agreement and their several pre-existing partnerships, which Whirled did.

14.      Costello and Hilker have shared attribution and royalties in this manner for nearly thirty years, through their partnership agreements. Whirled listed Costello and Hilker as co-writers with BMI on all songs they wrote together or separately pursuant to their request and pursuant to their pre-existing co-author agreement and their several pre-existing partnerships.

15.     Whirled's payroll and tax records, as well as Costello's own tax records, reflect his status as an employee. Whirled paid the employer's share of FICA withholdings for Costello. Whirled also provided Costello valuable employee benefits, including a cell phone, musical equipment stipend, vacation pay, a health insurance stipend, and contributing to his retirement plan.

16.     Consistent with the employment relationship, Whirled directed and supervised significant aspects of Costello's work, including specifying musical genres,

song duration, rhythms, beats, tempos, arrangements, song formats, and other aspects of the songwriting process.

### *Costello's Assertion of Copyright Ownership*

17.     Last year, for a variety of reasons including significant changes in the music publishing industry, Whirled made the difficult decision to eliminate Costello's songwriter position. This did not affect his roles as a shareholder and director. The company no longer employs any staff songwriters.

18.     After Whirled terminated Costello's employment on December 31, 2014, Costello asserted, for the first time, that he was an independent contractor rather than an employee. He did this as part of claiming the copyrights to the musical works he composed and recorded for Whirled.

19.     Costello has refused multiple requests by Whirled to acknowledge and memorialize, in an industry-standard acceptable form and content, the company's ownership of these copyrights.

20.     With respect to the compositions and sound recordings Costello and Hilker contributed for their shares in Whirled through their several pre-existing partnerships, Costello has further declined to sign an industry-standard form of written copyright assignment vesting copyright ownership for such compositions and sound recordings in Whirled, thereby placing a cloud on Whirled's rights in those compositions and sound recordings as well.

. . .

. . .

. . .

. . .

*Costello's Misappropriation of Whirled's Trademarks*

21.     Whirled owns certain federally registered trademarks and service marks that are nationally and internationally recognized in connection with its business, as follows (the "Registered Trademarks"):

| MARK | Reg. No. | Registered | First Used | Goods & Services |
|---|---|---|---|---|
| VINTAGE MASTERS® | 4,322,455 | April 16, 2013 | July 1, 2007 | Music Licensing in Film, TV, and Internet |
| VINTAGE MASTERS® | 4,322,454 | April 16, 2013 | July 1, 2007 | Musical Sound Recordings |
| ONE STOP SHOP VINTAGE MASTERS-FERVOR RECORDS® | 3,847,410 | September 14, 2010 | December 2, 2009 | Music Licensing in Film, TV, and Internet |
| FERVOR RECORDS™ | Serial No. 86676611 | Application pending with USPTO | January 5, 1990 | Musical Sound Recordings |
| FERVOR RECORDS™ | Serial No. 86666822 | Application pending with USPTO | January 5, 1990 | Music Licensing in Film, TV, and Internet |

22.     Whirled also owns certain common law trademarks that have been used throughout the world, including:

  a.   The service mark, WILD WHIRLED MUSIC™ and WHIRLED MUSIC™ (collectively, the "WWM Trademark"). Whirled does business under the WWM Trademark worldwide and has done so continuously since as early as 2002.

  b.   The service mark, CUE SHEET MUSIC™ (the "Cue Sheet Music Mark"). Whirled, through Trifecta, does business under the Cue Sheet Music Mark worldwide and has done so continuously since as early as 2007.

23.     Shortly after Whirled terminated Costello's employment, and as part of setting up his own competing music publishing business (the "Competing Business"),

Costello purchased the URL www.jc3publishing.com and other domain name URLs (uniform resource locators) from the ICANN Register, GoDaddy.com as indicated in the following table. In all registrations (including Costello's main webpage for his Competing Business, www.jc3publishing.com), Costello listed "WWM" as the name of the "organization" affiliated with the URL. Costello improperly used Whirled's WWM Trademark in his registration to make it appear that Whirled (the "organization") is somehow affiliated or associated with the URL www.jc3publishing.com, which it is not. The websites, at almost all of the purchased URLs/domains (as indicated in the following table), redirect to Costello's website at http://jc3publishing.com.

| Date Registered | URL Registered by Costello | WWM listed as affiliated entity? | Redirected to: |
|---|---|---|---|
| 1/26/15 | www.whirledmusicjc3.com | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.jc3publishing.com | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.fervorjc3.com | Yes | |
| 1/26/15 | www.vintagemastersjc3.com | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.cuesheetmusic.net | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.qsheetrecords.com | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.cuesheetrecords.com | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.qsheetmusic.org | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.whirledjohncostello.com | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.qsheetmusic.net | Yes | http://jc3publishing.com/ |
| 1/26/15 | www.cuesheetmusic.com | Yes | |
| 1/26/15 | www.qsheetmusic.com | Yes | http://jc3publishing.com/ |

24.     Costello has wrongfully used Whirled's Registered Trademarks, Cue Sheet Music Mark, WWM Trademark, and Whirled's name in connection with his Competing Business.

25.     The website for Costello's Competing Business at www.jc3publishing.com also contains images of film and TV posters that are intended to deceive and imply that Costello, rather than Whirled, placed and licensed the subject compositions and recordings in such films and TV programs. Costello was a staff composer of Whirled and played no role in such licenses and placements. Such implication is made by Costello to deceive the users of film and TV music, including Whirled's clients and licensees, into thinking that it was Costello and not Whirled who was responsible for obtaining said music licenses and placements.

<u>**Plaintiff's Claims**</u>

**FIRST CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT REGARDING COPYRIGHT OWNERSHIP**

26.     Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

27.     There is an actual, substantial and judiciable controversy between Whirled and Costello concerning Whirled's right to license, publish, and otherwise exploit the musical works that Costello composed while working for Whirled, as well as the musical works he promised to contribute for his shares in Whirled.

28.     Whirled is entitled to a judicial declaration that the musical works that Costello composed for Whirled since its formation in 2002 are "works made for hire" under an employer-employee relationship and therefore Whirled is the sole owner of said musical works pursuant to the Copyright Act's work-for-hire provisions.

29.     In the alternative, in the event the Court determines any such musical work does not qualify under the work-for-hire doctrine, Whirled is entitled to a judicial

declaration that it is the sole owner pursuant to one or more notes, memorandums, or instruments of conveyance in writing and signed by Costello and/or his duly authorized agents.

30.     These include the no less than six written contracts as follows:  (A) Production Agreement dated June 13, 2007 but effective retroactively as of May 1, 2002 by and between Costello, Hilker, another third party author and Whirled; (B) Production Agreement dated October 1, 2008 by and between Costello, Hilker, another third-party author and Trifecta Holdings, LLC ("Trifecta"), which is wholly owned by Whirled; (C) Production Agreement dated October 21, 2013 by and between Costello, Hilker, and two other third-party authors and Trifecta; (D) Production Agreement dated May 20, 2010 by and between Costello, Hilker, and several other third-party authors and Trifecta, as amended by the addendum signed by all of the parties dated as of November 20, 2010; (E) Production Agreement dated April 9, 2012 by and between Costello, Hilker, another third-party author and Trifecta; and (F) Production Agreement dated October 26, 2011 by and between Costello, Hilker, and two other third-party authors and Whirled.  These are collectively referred to hereinafter as the "Production Agreements."

31.     These notes, memorandums, or instruments of conveyance also include the written and signed partnership agreements between Costello and Hilker. Such partnership agreements transferred Costello's musical compositions and related sound recordings to the partnerships that in turn transferred them ultimately to Whirled. Such assignments are reflected by the custom and course of dealing between Costello and Whirled for over a decade.

32.     With respect the musical works that Costello and Hilker agreed to contribute through their partnerships for their shares, Whirled is entitled to a judicial declaration against Costello that it is the sole owner of all of these compositions (whether composed by Costello, Hilker, or both of them) and related musical sound recordings

because the May 20, 2002 shareholder minutes signed by Costello and Hilker qualify as a note, memorandum, or instrument of conveyance in writing and signed by them transferring the musical works to Whirled.

## SECOND CLAIM FOR RELIEF
## DECLARATORY JUDGMENT REGARDING SHARES

33.    Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

34.    In the event the Court determines that Whirled is not the sole owner of the musical works that Costello promised to contribute to Whirled in exchange for his shares, there is an actual, substantial and judiciable controversy regarding whether Costello is a shareholder in Whirled.

35.    If the May 20, 2002 shareholder minutes signed by Costello do not qualify as a note, memorandum, or instrument of conveyance of such musical works to Whirled, then there has been a failure of consideration and Whirled is entitled to a declaration that Costello does not own any shares in Whirled because he did not pay any consideration for the shares.

## THIRD CLAIM FOR RELIEF
## RESTITUTION

36.    Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

37.    In the event the Court determines that Costello was an independent contractor rather than employee, then Whirled is entitled to restitution of the wages and the value of the employee benefits that Whirled paid Costello premised on such employment. Such employee benefits include but are not limited to the employer's share of FICA withholdings, expense reimbursements, vacation pay, health insurance stipend, retirement contributions, mobile phones, musical equipment stipend, and the direct or

1   indirect cost to Whirled of any unemployment benefits received by Costello.

2       38.    Plaintiffs conferred a benefit on Costello by paying such wages and

3   employee benefits.

4       39.    Costello was unjustly enriched by receiving such wages and employee

5   benefits.

6       40.    Under the circumstances, in good conscience, Costello is required to make

7   restitution to Whirled.

8                     **FOURTH CLAIM FOR RELIEF**

9                      **BREACH OF CONTRACT**

10      41.    Whirled re-alleges and incorporates each and every allegation contained in

11   the paragraphs above as if fully set forth herein.

12      42.    In the event the Court determines that Whirled is not the sole owner of the

13   musical works that Costello promised to contribute to Whirled in exchange for his shares,

14   then Costello breached his agreement reflected in the May 20, 2002 shareholder minutes

15   to assign such musical works to the company.

16      43.    In the event the Court determines that Whirled is not the sole owner of the

17   musical works that Costello composed while working for the company, then Costello

18   breached his verbal employment agreement with Whirled that the company would

19   receive title to such compositions in exchange for employing him.

20      44.    In the event the Court determines that Whirled is not the sole owner of the

21   musical works that are the subject of the Production Agreements, then Costello breached

22   the Production Agreements by failing to deliver the copyrights to these songs.

23      45.    Costello's breaches have damaged Whirled by depriving it of ownership of

24   and the ability to profit from Costello's compositions.

25      46.    This claim arises out of contract for purposes of an attorneys' fees award

26   under A.R.S. § 12-341.01

# FIFTH CLAIM FOR RELIEF

## INFRINGEMENT OF REGISTERED TRADEMARKS IN VIOLATION OF

## 15 U.S.C. § 1114(1)

47.     Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

48.     Costello is actually aware of Whirled's Registered Trademarks and Whirled's rights in and to such Registered Trademarks, prior to adopting and using Whirled's Registered Trademarks in connection with Costello's Competing Business.

49.     Costello purchased the URLs as listed in the table in paragraph 23 above and lists "WWM" as the name of organization affiliated with the name. The websites at these URLs redirects to Costello's website at http://jc3publishing.com/ as indicated in the table set forth in paragraph 23 above.

50.     Upon information and belief, Costello chose to use Whirled's Registered Trademarks in the purchased URLs to confuse and deceive customers that their goods were associated with, approved by, or sponsored by Whirled and a part of Whirled's business.

51.     The services offered by Costello's in connection with his Competing Business are directly competitive with Whirled's business provided under its Registered Trademarks.

52.     Whirled currently has no association, affiliation, sponsorship, or any other connection to Costello, except to the extent Costello is a shareholder in Whirled and is a fiduciary of Whirled by virtue of being a Director of Whirled.

53.     Upon information and belief, such deception and confusion was intentional and designed by Costello to trade off of and capitalize on Whirled's goodwill and reputation. The aforesaid infringement by Costello was committed willfully, knowingly, maliciously, and in conscious disregard of Whirled's rights.

54.     The aforesaid infringement by Costello has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Whirled's property and Business.

55.     Costello's use of Whirled's Registered Trademarks is likely to cause confusion, or to cause mistake, or to deceive as to origin, sponsorship, or approval of Costello's goods, services, or commercial activities, in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)).

56.     Upon information and belief, Costello's conduct constitutes willful and malicious infringement of Whirled's Registered Trademarks under 15 U.S.C. § 1114, thus rendering the present case as an "exceptional" case as that term is employed in 15 U.S.C. § 1117.

57.     Whirled has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

## TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(A)

58.     Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

59.     Costello's use of Whirled's Registered Trademarks is likely to cause confusion, or to cause mistake, or to deceive as to origin, sponsorship, or approval of Costello's good and services, or commercial activities, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

60.     The aforesaid infringement by Costello was committed willfully, knowingly, maliciously, and in conscious disregard of Whirled's rights.

61.     The aforesaid infringement by Costello has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Whirled's property and business.

62.     Whirled has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**

**COMMON LAW INFRINGEMENT OF WHIRLED'S CUE SHEET MUSIC**

**TRADEMARK AND WWM TRADEMARK**

63.     Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

64.     Whirled has used its Cue Sheet Music Mark in worldwide commerce in connection with Whirled's business since as early as 2007. Publisher trade names are exclusive and synonymous with identifying the source of a music catalogue in the music publishing and licensing business.

65.     Whirled has used its WWM Trademark in worldwide commerce in connection with Whirled's business since as early as 2002. Publisher trade names are exclusive and synonymous with identifying the source of a music catalogue in the music publishing and licensing business.

66.     As indicated in the table in paragraph 23 above, immediately after being terminated by Whirled, Costello purchased the URLs including www.qsheetmusic.com, www.cuesheetmusic.com, www.cuesheetmusic.net, www.qsheetmusic.net, www.qsheetmusic.org, www.qsheetrecords.com, www.cuesheetrecords.com, www.vintagemastersjc3.com, www.whirledmusicjc3.com, www.fervorjc3.com, and www.whirledjohncostello.com and he listed "WWM" as the name of organization that is affiliated with those domain names. With the exception of www.cuesheetmusic.com and www.fervorjc3.com, the websites all redirected to Costello's website at http://jc3publishing.com and were used by Costello in connection with his Competing Business.

67.     Costello had both actual and constructive knowledge of Whirled's ownership of and rights in its Cue Sheet Music Mark and WWM Trademark prior to Costello's infringing use of Whirled's Cue Sheet Music Mark and Whirled's WWM

Trademark.

68.     Costello adopted and used in commerce Whirled's Cue Sheet Music Mark and Whirled's WWM Trademark in his Competing Business, with full knowledge of Whirled's superior rights, and with full knowledge that his infringing use of Whirled's Cue Sheet Music Mark and Whirled's WWM Trademark was intended to cause confusion, mistake and/or deception. Further, Costello wrongfully listed WWM and used Whirled's WWM Trademark to indicate that the URLs www.qsheetmusic.com, www.cuesheetmusic.com, www.cuesheetmusic.net, www.qsheetmusic.net, www.qsheetmusic.org, www.qsheetrecords.com, www.cuesheetrecords.com, www.vintagemastersjc3.com, www.whirledmusicjc3.com, www.fervorjc3.com, and www.whirledjohncostello.com were somehow affiliated or associated with Whirled when in fact they are not.

69.     Costello offers his goods and services in his Competing Business under Whirled's Cue Sheet Music Mark and Whirled's WWM Trademark in the same channels of trade as those in which Whirled's legitimate goods and services are offered.

70.     Costello's infringing use of Whirled's Cue Sheet Music Mark and Whirled's WWM Trademark in connection with Costello's Competing Business is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of Costello's Competing Business with Whirled, in violation of applicable laws.

71.     Costello's actions were taken with the intent to trade upon the valuable goodwill established by Whirled in its Cue Sheet Music Mark and Whirled's WWM Trademark.

72.     As a result of Costello's infringement, Whirled has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Whirled in its Cue Sheet Music Mark and Whirled's WWM Trademark. This continuing

loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Whirled has no adequate remedy at law. Whirled will continue to suffer irreparable harm unless this Court enjoins Costello.

## EIGHTH CLAIM FOR RELIEF

## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(A)

73.     Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

74.     Costello has deliberately and willfully attempted to trade on Whirled's long-standing and hard-earned goodwill in its Whirled's Registered Trademarks, its Cue Sheet Music Mark, its WWM Trademark, and the reputation established by Whirled in connection with its products and services, as well as in order to confuse consumers as to the origin and sponsorship of Costello's services in his Competing Business and to pass off his services in commerce as those of Whirled.

75.     Costello's actions were taken with the intent to trade upon the valuable goodwill established by Whirled in its Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark.

76.     In addition, Costello, without the authorization or knowledge of Whirled, attempted to change the records of BMI to reflect that Costello was the sole author of the musical compositions, rather than sharing authorship of the compositions with Hilker, pursuant to the pre-existing co-author agreement and their several pre-existing partnerships.

77.     Based on information and belief, BMI did not allow Costello to engage in such conduct and refused to allow Costello to undertake such false and fraudulent claim and false designation of origin.

78.     Further, in addition, Costello's Competing Business website at

www.jc3publishing.com, contains images of film and TV posters that imply that Costello and not Whirled placed and licensed the co-authored compositions and co-authored recordings in such films when, in fact, Costello had nothing to do with such licenses and placements. Such implication is made by Costello to deceive the users of film and TV music into thinking Costello and not Whirled was responsible for obtaining said film and TV music licenses and placements.

79.     Further, Costello has used the services of artists and songwriters previously affiliated with Whirled in Costello's Competing Business.

80.     Costello's unauthorized and tortious conduct has also deprived and will continue to deprive Whirled of the ability to control the consumer perception of its products and services offered under Whirled's Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark, placing the valuable reputation and goodwill of Whirled in the hands of Costello.

81.     Costello's aforementioned conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Costello's Competing Business with Whirled, and as to the origin, sponsorship or approval of Whirled, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

82.     As a result of Costello's aforesaid conduct, Whirled has suffered commercial damage, including without limitation the continuing loss of the goodwill and reputation established by Whirled in its Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark. This continuing loss cannot be properly calculated and thus constitutes irreparable harm and an injury for which Whirled has no adequate remedy at law. Whirled will continue to suffer irreparable harm unless this Court enjoins Costello's conduct.

83.     Costello's use of Whirled's Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark is likely to cause confusion, mistake or deception as to

source, origin, sponsorship or approval of Costello's products and services, and constitutes infringement of Whirled's Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark.

84.     By his actions, Costello has infringed the Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark deliberately and with the intention of wrongfully trading on the goodwill and reputation symbolized by the Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark.

85.     Whirled is entitled to an award of damages from Costello for the loss of business and other monetary losses that Whirled has suffered and will continue to suffer in the future as a proximate result of Costello's misappropriation and infringement of the Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark. Alternatively, Whirled is entitled to recover damages in an amount equivalent to the amount of profits that Costello has derived and may continue to derive as a result of his unlawful misappropriation and infringement of the Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark.

86.     Costello's conduct as described above has been willful, deliberate, malicious, and intended to injure Whirled. Therefore, Whirled is also entitled to recover exemplary damages from Costello to punish and deter him and others similarly situated from engaging in similar wrongful conduct in the future. Costello should also be, upon final hearing, permanently enjoined from using the Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark.

## NINTH CLAIM FOR RELIEF

## UNFAIR COMPETITION UNDER A.R.S. § 44-1552

87.     Whirled re-alleges and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

88.     Costello's unauthorized use of the Whirled's Registered Trademarks, Cue

Sheet Music Mark, WWM Trademark, and other actions as specified herein constitutes acts of unfair competition through Costello's deceptive, misleading and false appropriation for his own use of the name, brand, trademark, reputation, and goodwill of Whirled's Registered Trademarks, Cue Sheet Music Mark, and WWM Trademark in violation of A.R.S. § 44-1552.

89.     The aforesaid infringement by Costello was committed willfully, knowingly, maliciously, and in conscious disregard of Whirled's rights.

90.     The aforesaid infringement by Costello has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Whirled's property and business.

91.     Whirled has no adequate remedy at law.

## **Demand for Jury Trial**

92.     Under Fed. R. Civ. P. 38(a), Whirled requests a trial by jury of all issues so triable.

WHEREFORE, Whirled prays for judgment against the Costellos as follows:

A.     For the requested declaratory relief.

B.     For an award of compensatory, consequential, special, and all other damages and restitution needed to make Whirled whole.

C.     A preliminary and permanent injunction enjoining Costello, their offices, agents, servants, employees, attorneys, and those in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from:

(i)     using, reproducing, advertising, or promoting in connection with any product or service the Whirled's Registered Trademarks, Cue Sheet Music Mark, WWM Trademark, Plaintiff's name or mark or any name or mark confusingly similar therewith;

(ii)    using, reproducing, advertising or promoting any slogan, mark, or name that may be calculated to represent or that has the effect of representing that the products or services of Costello or any other person are sponsored by, authorized by, or in some way associated with Whirled;

(iii)    injuring the commercial reputation, renown, and goodwill of Whirled or the Whirled's Registered Trademarks, Cue Sheet Music Mark, or WWM Trademark;

(iv)    using or reproducing any word, term, name, symbol, or device, or any combination thereof, on any product or in connection with any service that confuses or falsely represents or misleads, is calculated to confuse, falsely represent, or mislead, or that has the effect of confusing, falsely representing, or misleading, that the products, services, or activities of Costello or another are in some way connected with Whirled, or is sponsored, approved, or licensed by Whirled; and

(v)    causing a likelihood of confusion with respect to Whirled or any injury to the business reputation of Whirled.

D.    An award of damages to Whirled under the Lanham Act, and in particular pursuant to 15 U.S.C. § 1117(a), of up to three times the damages suffered by Whirled and three times the profits earned by Costello.

E.    Directing Costello to transfer to Whirled (at no cost to Whirled) all domain names that contain or consist of Whirled's marks, including but not limited to the URL's listed in paragraph 23.

F.    Ordering Costello to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all Internet webpages/scripts/

20

html code, articles, packages, wrappers, products, displays, labels, signs, circulars, kits, packaging, letterhead, business cards, promotional items, literature, sales aids, or other matter in the possession, custody, or under the control of Costello or his agents bearing the Whirled's Registered Trademarks, Cue Sheet Music Mark, or WWM Trademark, in any manner, or any mark that is confusingly similar to or a colorable imitation of these marks.

G.    Ordering Costello to take all steps necessary to cancel any state or local business registrations, including corporate name registrations and dba filings, that include Whirled's name or marks or amend those registrations to names that do not include Whirled's name or marks, and to remove any references to any business registrations, including corporate names and dba filings, that include Whirled's name or marks.

H.    Ordering Costello to retain and disclose all communications with all individuals and entities with whom they engaged in any transaction relating to or arising from the use of the Whirled's Registered Trademarks, Cue Sheet Music Mark, or WWM Trademark, names or marks, or otherwise in furtherance of the scheme alleged herein.

I.    Pursuant to 15 U.S.C. § 1117(a), of up to three times the damages suffered by Whirled and three times the profits earned by any and all of the Costello.

J.    The (a) forfeiture of Defendant Costello's stock and tender back to Whirled, (b) disgorgement by Costello of all shareholder distributions and other shareholder benefits received by Defendant Costello since 2002, and/or (c) payment by Costello to Whirled of an amount equal to 26.323% of the value of Whirled to support consideration; and/or (d) ordering

Costello to execute all necessary documentation to transfer the musical works to Whirled as consideration for his stock in Whirled.

K.     For an award of treble, exemplary, and/or punitive damages.

L.     For an award of attorneys' fees and costs.

M.     For an award of pre-judgment and post-judgment interest.

N.     For such other and further relief as may be needed to provide Whirled with a complete remedy.

DATED this 20th day of October, 2015.

TIFFANY & BOSCO P.A.


By: /s/ Christopher A. LaVoy

Christopher A. LaVoy
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237

Connie J. Mableson
CONNIE J. MABLESON, PLLC
1938 East Osborn Road
Phoenix, Arizona 85016

*Attorneys for Plaintiff*